UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TONY L. GILCHRIST,** | ) | Case No. 5:09CV02345 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| **INPATIENT MEDICAL SERVICES, INC.,** | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on a motion by Defendant Inpatient Medical Services, Inc. ("IMS") to dismiss or stay the proceedings and to compel arbitration based upon the arbitration clause in Plaintiff's employment contract. Plaintiff responded to the motion and Defendant replied.

**I. Background**

In February 2008, IMS, a provider of specialty physician staffing services for hospital and in-patient medical facilities, hired Plaintiff Tony Gilchrist to serve as its Chief Operating Officer. Gilchrist's employment contract included an arbitration clause (the "Arbitration Provision"), which provides as follows:

> **6.1 Arbitration**.  With the exception of Article IV, any unresolved dispute arising out of or relating to this Agreement shall be settled exclusively by arbitration, conducted by a single arbitrator in Akron, Ohio, in accordance with the American Health Lawyers Association ("AHLA") Alternative Dispute Resolution Service Rules of Procedure then in effect, provided that the discovery provided for under the Ohio Rules of Civil Procedure shall be available to all parties to the arbitration and that the parties may agree to use an arbitrator other than those provided by the AHLA.  The arbitrator shall not have the authority to add to, detract from, or modify any provision hereof.  The arbitrator shall have the

authority to order back-pay, severance compensation, reimbursement of costs, including those incurred to enforce this Agreement, and interest thereon, but shall not be permitted to award punitive damages. The parties agree that the decision by the arbitrator shall be specifically enforceable and the arbitration award shall be final and judgment may be entered upon it in any court having jurisdiction over the subject matter of the dispute. The fees of the arbitrator, his or her reasonable expenses and attorneys' fees incurred in connection shall be allocated by the arbitrator among the parties as the arbitrator may deem just and equitable.

According to Gilchrist, while employed at IMS he observed IMS employees failing to comply with Medicare billing requirements and reported these observations to IMS's CEO and other officers via in-person communications and in writing, advising the company to correct the improprieties to avoid potential liability under the False Claims Act, 31 U.S.C. § 3729, *et seq*. IMS responded by summarily terminating him on April 23, 2009—he claims in retaliation for his investigation and complaints regarding the company's purportedly illegal business practices. His complaint asserts causes of action for violating 31 U.S.C. § 3730(h) (the whistleblower provisions of the FCA) and breach of contract. And in recognition of the Agreement's arbitration provision, Gilchrist's complaint also asks that the Court declare the provision null and void because its terms prohibit the arbitrator from awarding him the same relief the statute makes available for FCA retaliation claims.

Seeking dismissal and/or a stay of litigation, IMS argues that the Arbitration Clause in the employment agreement mandates that Gilchrist submit his claims to arbitration. Gilchrist argues that the Arbitration Provision is both procedurally and substantively unconscionable, and therefore the Court should deny the motion and refuse to order arbitration or, alternatively, excise the offending portions of the agreement before ordering its enforcement.

## II. Law and Analysis

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, governs IMS's motion. Under

the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

### A. Validity of the Arbitration Agreement

The FAA, which applies to employment contracts like the one at issue here, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001), provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a strong presumption favoring the enforcement of arbitration agreements, with any doubts regarding an agreement's scope resolved in favor of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). Despite this presumption, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the

substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).  The underlying question of whether the parties agreed to arbitrate is to be "decided by the court, not the arbitrator." *AT & T Techs. v. Commn'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," a showing that mirrors the summary judgment standard under Rule 56. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The Arbitration Provision employs broad language in describing what it covers, providing that "any unresolved dispute arising out of or relating to this Agreement shall be settled exclusively by arbitration." Gilchrist's complaint sets forth two core causes of action: breach of contract and FCA retaliation. Federal statutory causes of action like Gilchrist's FCA retaliation claim "may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *See Gilmer*, 500 U.S. at 26. And given that the agreement defined Gilchrist's employment relationship with IMS and the claims in this case arise out of his termination, the entire controversy unquestionably falls within the Arbitration Provision's scope. Gilchrist does not (and could not) argue otherwise. *See Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983) (describing "arising out of" language as creating an "extremely broad" arbitration clause).

Gilchrist does, however, challenge the clause's enforceability, which presents a question of Ohio state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). "[G]enerally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability may invalidate arbitration

4

agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Gilchrist attacks the arbitration clause as procedurally and substantively unconscionable; to invalidate the clause entirely, he must succeed in proving both. *See Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 67 (2009).

### 1. Procedural Unconscionability

Procedural unconsciouability "concerns the circumstances surrounding the formation of the agreement and occurs when no voluntary meeting of the minds was possible." *Porpora v. Gatliff Bldg. Co.*, 160 Ohio App. 3d 843, 847 (9th Dist. 2005). "In determining procedural unconscionability, Ohio courts look to 'factors bearing on the relative bargaining positions of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the terms were possible.'" *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2002) (en banc) (quoting *Cross v. Carnes*, 132 Ohio App. 3d 157, 170 (11th Dist. 1998)).

Gilchrist's brief in opposition does not address any of the relevant procedural factors. He does not argue, for instance, that he lacked bargaining power or did not understand the contract. Indeed, Gilchrist gears his arguments exclusively toward substantive unconscionability, complaining that the Arbitration Provision eliminates statutory relief he would be entitled to in a judicial forum and fails to include any concomitant waiver of rights by IMS. Accordingly, the Court finds that Gilchrist fails to demonstrate a genuine issue as to procedural unconscionability.

### 2. Substantive Unconscionability

Gilchrist focuses his attack on substantive unconscionability. He claims that language in the Arbitration Provision limits the relief that would otherwise be available to him in court under the FCA anti-retaliation statute, rendering it unenforceable. Alternatively, he argues that even if the Court finds the Arbitration Plause generally valid, the portion of it limiting the remedies available in the arbitral forum is unconscionable and should not be enforced.

A contract is substantively unconscionable when its terms unreasonably favor one party over another. *Collins v. Click Camera & Video, Inc.*, 86 Ohio App. 3d 826, 834 (2d Dist. 1993). No set of general factors governs commercial unreasonableness; instead, considerations vary case by case. *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App. 3d 75, 80 (2d Dist. 1996). Gilchrist's argument that the arbitration clause unfairly limits his available remedies is properly considered under the rubric of substantive unconscionability.[1] *See Morrison*, 317 F.3d at 666 (analyzing challenge to remedial limitations as a question of substantive unconscionability).

According to the Supreme Court, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). "The critical question is not whether a claimant may obtain *some* amount of the entire range of remedies under [the statute], but whether

---

[1] In his brief, Gilchrist also hints at an argument that the Arbitration Provision is substantively unconscionable due to a lack of mutuality, positing that "while Gilchrist waives remedies available to him under the [FCA] . . . "[t]here is no concomitant waiver of any rights by IMS. (Pl.'s Opp'n to Mot. to Dismiss, at 7-8.) This argument lacks merit. "Arbitration provisions need not require both parties to arbitrate their claims, so long as the contract as a whole imposes mutual obligations on both parties." *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (citations omitted). Gilchrist fails to present any colorable argument that the employment agreement as a whole did not impose performance obligations on IMS.

6

the limitation on remedies at issue undermines the rights protected by the statute." *Morrison*, 317 F.3d at 670.

In *Morrison*, the en banc Sixth Circuit held that an arbitration agreement curtailing a Title VII plaintiff's remedies "undermine[d] both the remedial and deterrent principles of Title VII," *id.*, and was therefore "not enforceable." *Id.* at 673. Under the statute, a successful plaintiff could recover up to $300,000 in compensatory and punitive damages, back pay from the date of termination, and front pay from the date of judgment to the date of retirement. *Id.* at 671. In contrast, the arbitration clause at issue restricted Morrison's remedies to injunctive relief, one year of back pay and reimbursement for lost fringe benefits, two years of front pay (if reinstatement was not possible), and compensatory damages in accordance with applicable law. In addition, and of particular relevance here, the arbitration clause limited recovery of punitive damages to the greater of $5,000 or the sum of the claimant's front and back pay awards. Finding that this limitation on punitive damages "undermine[d] the deterrent purposes of Title VII," and "eviscerate[d] Congress's intent to utilize punitive damages as a tool for combating discrimination," the Sixth Circuit deemed the clause unenforceable. *Id.* at 672. The court went on to hold, however, that the remedial limitations were severable from the arbitration agreement as a whole. *Id.* at 675. And since the arbitration had already taken place and the arbitrator did not apply the limitation on remedies, the Sixth Circuit affirmed the district court's order compelling arbitration. *Id.*

The Arbitration Provision in Gilchrist's employment agreement contains a similar and even more restrictive limitation on punitive damages—it bars the arbitrator from awarding them altogether. The Arbitration Provision also specifies "that arbitrator shall have the authority

7

to order back-pay, severance compensation, reimbursement of costs, including those incurred to enforce this Agreement, and interest thereon." Gilchrist compares this to the statute, which permits courts to award successful plaintiffs "reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." 31 U.S.C. § 3730(h)(2). Highlighting the differences, Gilchrist maintains that the Arbitration Provision precludes the arbitrator from awarding him double backpay; reinstatement; or compensation for "special damages," including attorney's fees and participation in IMS's profit-sharing plan.

Gilchrist argues that these differences render the entire arbitration agreement substantively unconscionable. But he acknowledges that in *Morrison*—unquestionably Gilchrist's best authority—the court found that the plaintiff "knowingly and voluntarily waived her right to pursue her employment claims in federal court," *id.* at 668, and (after finding that the unenforceable cost-splitting and remedial limitation provisions were severable) upheld the district court's order compelling arbitration. *Id.* at 675. He also concedes that his employment agreement includes a severability clause providing that "[i]f any provision of this Agreement shall be held invalid, illegal, unenforceable or inoperative by any governmental body or court of competent jurisdiction, the balance of the Agreement shall remain in full force and effect as if such provision has not been included." (Doc. No. 1-1 at 10, ¶ 7.7.) So even if Gilchrist succeeded in establishing that, under *Morrison*, the remedial limitations imposed by the Arbitration Provision are unenforceable, they cannot serve to invalidate the parties' agreement to arbitrate altogether. Accordingly, the Court finds that the dispute is arbitrable and will grant IMS's motion

to dismiss and compel arbitration.[2]

### B. Enforceability of Remedial Limitations

Gilchrist adopts the fallback position that even if arbitration is required, the remedial limitations in the Arbitration Provision cannot be enforced in the arbitral forum. A valid arbitration clause must allow for an arbitral forum that "provide[s] litigants with an effective substitute for the judicial forum." *Morrison*, 317 F.3d at 659. The arbitrability of federal statutory claims like Gilchrist's "rests on the assumption that the arbitration clause permits relief equivalent to court remedies." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (quoted in *Morrison*, 317 F.3d at 673). Although an arbitration agreement "does not violate a plaintiff's rights merely because it precludes a limited number of remedies," *Price v. Taylor*, 575 F. Supp. 2d 845, 854 (N.D. Ohio 2008), such provisions are not enforceable where they "undermine[] the rights protected by the statute," which they accomplish by restricting access to the "full panoply of remedies" available under the statute. *Morrison*, 317 F.3d at 669.

The threshold question is whether, in fact, the Arbitration Provision prevents Gilchrist from obtaining relief he could achieve in the judicial forum. Gilchrist interprets the provision's lack of an affirmative statement authorizing the arbitrator to award double backpay, reinstatement, and special damages, as foreclosing his access to such relief. IMS, on the other

---

[2] With respect to staying the case or dismissing, the Court has discretion to choose either option. *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir. 1990); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009). "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Because the Arbitration Provision covers all the claims Gilchrist asserts in the complaint, the Court finds that dismissal without prejudice is appropriate. *See Nestle Waters N. Am., Inc. v. Bollman*, No. 1:06-CV-577, 2006 WL 3690804, at *6 (W.D. Mich. Dec. 11, 2006) ("Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice.")

hand, insists that "[t]he only award the Arbitration Provision specifically prevents the Plaintiff from recovering is punitive damages." (Def.'s Reply at 7.)

Punitive damages are not available in FCA retaliation cases. *Cf. Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519 (10th Cir. 2000) ("the FCA does not provide for punitive damages"); *United States ex rel. Satalich v. City of Los Angeles*, 160 F. Supp. 2d 1092, 1095 (C.D. Cal. 2001) ("the Court concludes that section 3730(h), unlike section 3729, does not impose punitive damages"). Thus, the punitive damages ban in the Arbitration Provision does not inhibit Gilchrist's ability to obtain relief provided by the statute. The issue therefore turns on whether, as Gilchrist suggests, the absence of language affirmatively authorizing the arbitrator to award double backpay, reinstatement, and special damages means that such relief is unavailable.

The Court disagrees with Gilchrist's reading of the Arbitration Provision. As IMS points out, the agreement does not affirmatively restrict his access to any relief other than punitive damages; regarding the availability of double backpay, reinstatement, and special damages, the Arbitration Provision is silent. The Court declines the invitation to interpret that silence as restricting the arbitrator's power to award relief authorized by the statute. Courts routinely uphold an arbitrator's selection of a particular remedy, so long as the contract does not preclude it. *See Minute Maid Co. v. Citrus Workers, Local 444*, 331 F.2d 280, 281 (5th Cir. 1964) (upholding arbitrator's award of back pay where the underlying collective bargaining agreement neither permitted nor precluded such a remedy). Here, the Arbitration Provision does not expressly bar the arbitrator from awarding any of the relief set forth in 31 U.S.C. § 3730(h)(2), and thus Gilchrist's contention that the arbitrator will construe the agreement in the restrictive manner he suggests amounts to sheer speculation. According to the Supreme Court,

"'mere speculation' that an arbitrator might interpret [an] ambiguous agreement[] in a manner that casts [its] enforceability into doubt" does not give the court authority to resolve the ambiguity in the first instance. *PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401, 406-407 (2003). Rather, because the parties agreed to arbitrate "any unresolved dispute arising out of or related to" the agreement, and the dispute about what remedies the arbitration contract permits qualifies as a dispute relating to the agreement, the question is for the arbitrator, not the court. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-52 (2003). Accordingly, the Court finds the Arbitration Provision valid and enforceable, and leaves for the arbitrator's determination what remedies, if any, to award.

### III. Conclusion

For these reasons, IMS's motion to dismiss and compel arbitration is **GRANTED**. Gilchrist is **ORDERED** to submit to arbitration to resolve any disputes relating to his discharge. This case is **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

Dated: August 23, 2010

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**